## SHORES v. UNITED STATES.
### No. 13743.

United States Court of Appeals
Eighth Circuit.
June 10, 1949.

George F. Edwards, Texarkana, Ark. (Ted Goldman, Texarkana, Ark., with him on the brief), for appellant.

Charles A. Beasley, Jr., Assistant United States Attorney, Fort Smith, Ark. (R. S. Wilson, United States Attorney, and David R. Boatright, Assistant United States' Attorney, Fort Smith, Ark., with him on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant was convicted by a jury, on five counts, of knowingly having transported his wife in interstate commerce for the purpose of prostitution, and of thereby having violated section 2 of the White Slave Traffic Act, Mann Act, 18 U.S.C.A. § 398, now § 2421.

The written statement which appellant gave the officers after he was taken into custody is a sordid narrative—the revolting tale of a man 26 years old, previously a taxicab driver, marrying a girl, not yet 17 years of age, and using her immediately and continuously thereafter, for almost eight months, until his arrest, to provide him with his livelihood, by having her sell her body, at hotels and tourist camps, as he degradingly moved her from city to city and across state lines.

The portions of his statement which dealt with the prostitutional transportations preceding those involved in the indictment were received in evidence on the issue of his motive or intent in relation to the prosecuted occasions. Cf. Kinser v. United States, 8 Cir., 231 F. 856, 860, 146 C.C.A. 52; Baish v. United States, 10 Cir., 90 F. 2d 988, 990; Cohen v. United States, 5 Cir., 120 F.2d 139, 140.

Appellant offered no evidence on the trial. His principal contention for reversal is that the court erred in permitting his wife, over his objection, to testify against him. The wife testified to the various transportations which appellant had made of her and to her practicing of prostitution at their different destinations. In the preliminary interrogation, which appellant's counsel was permitted to make of her, when the Government called her to the stand, she stated, however, in answer to leading questions, that appellant had not used any violence on her or compelled her to do anything against her will, and, when asked directly whether she desired to have appellant prosecuted and if she wished to testify against him, she replied, "I do not."

1. It is appellant's contention that exclusion of the wife's testimony was required by Johnson v. United States, 8 Cir., 221 F. 250. That case, decided in 1915, reversed a conviction under the Mann Act, because the accused's wife, who had been the subject of the transportation charged, was permitted to testify against him. The decision was rested upon the ground, as stated in the opinion, that "At common law the rule was that neither husband nor wife could testify against each other" and that the incompetency of the wife to be a witness against her husband "has not been

changed * * * [by statute] in a case like the present." 221 F. at page 251.

The old common law rule, as stated in Stein v. Bowman, 13 Pet. 209, 222, 10 L.Ed. 129, was that, "except in cases of violence upon her person," a wife is incompetent to testify criminally against her husband. Wigmore points out that the use of the term "incompetent," in thus stating the rule, is indiscriminating and inaccurate, in that the actual concept underlying the exclusion of such testimony was not one of absolute disqualification, such as in the case of the early incompetency of one spouse to testify for the other, but simply one of marital privilege, which could be asserted by either and to which the court was required to give effect unless it was waived by both. 8 Wigmore on Evidence, 3d Ed., § 2242. Cf. also Tinsley v. United States, 8 Cir., 43 F. 2d 890, 896.

But without regard to the nature of the underlying concept, the rule in any event, as noted, was admittedly subject to the exception of cases of violence by the husband against the wife. The Johnson case, supra, did not make mention of this exception, and it probably must be assumed that the court viewed the term "violence upon her person" as being entitled only to a literal signification and as not extending to a violation of the Mann Act unless the wife's transportation was the result of physical coercion.

That view, however, could hardly have taken into account that other federal courts had previously held that the term "violence," as used in the exception, was entitled to be given the signification of any personal wrong done the wife, which was either physically or morally injurious to her, and so included any transportation of her in violation of the Mann Act, and that the Supreme Court had refused to grant certiorari to review this holding. See Cohen v. United States, 9 Cir., 214 F. 23, certiorari denied 235 U.S. 696, 35 S.Ct. 199, 59 L.Ed. 430; United States v. Rispoli, D. C.Pa., 189 F. 271; United States v. Gwynne, D.C.Pa., 209 F. 993. As the opinion in the Cohen case expressed it, "the personal injury to a wife which permits the admission of her testimony against her husband, within the exception recognized at the common law, * * * is not, confined

to cases of personal violence, but may include cases involving a tort against the wife, or a serious moral wrong inflicted upon her, and * * * in a case of the prosecution of a man for bringing his wife from one state to another with intent that she shall practice prostitution, in violation of the White Slave Act, his act in so doing is such a personal injury to her as to entitle her to testify against him." 214 F. at page 29.

The Cohen case had been shortly followed by United States v. Bozeman, D.C.Wash., 1916, 236 F. 432; by Pappas v. United States, 9 Cir., 1917, 241 F. 665; and by Denning v. United States, 1918, 5 Cir., 247 F. 463.

All these accordant decisions were precedent of the emancipating declaration made by the Supreme Court in 1933, in Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 363, 93 A.L.R. 1136, that the federal courts were not to regard themselves as being fettered by the limitations of the criminal evidence rules of the common law as they might have existed at some particular time; that in the initial adoption of common law rules for the federal judicial system there equally was intended to be an adoption of those principles of extension and growth which always had been regarded as being inherent in the common law system and which in fact constituted the genius of that system; that the fact that a certain rule of evidence had been applied at the time the federal courts were established, or when a particular State was admitted to the Union, did not therefore give rise to a fixed limitation until such time as a change should be made by legislative action; that the courts at all times, in the application of any rule of evidence, should give heed to the general currents of legal thought, judicial opinion, and legislative action in the particular field; and that they should continuously "declare and effectuate, upon common-law principles, what is the present rule upon a given subject in the light of fundamentally altered conditions" and on the basis of "present day standards of wisdom and justice." 290 U.S. at pages 383 and 384, 54 S.Ct. at page 216, 78 L.Ed. 363, 93 A.L.R. 1136.

Mr. Justice (later Chief Justice) Stone restated the doctrine of the Funk case, in Wolfle v. United States, 291 U.S. 7, 12, 54 S.Ct. 279, 78 L.Ed. 617, decided at the same term, in the terse language, that rules of criminal evidence should be "governed by common-law principles as interpreted and applied by the federal courts in the light of reason and experience." This language was incorporated into Rule 26 of the subsequently promulgated Federal Rules of Criminal Procedure, 18 U.S.C.A., where it was provided that "The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of common law as they may be interpreted by the Courts of the United States in the light of reason and experience." The Notes of the Advisory Committee added the following comment: "This rule contemplates the development of a uniform body of rules of evidence to be applicable in trials of criminal cases in Federal courts. * * * The rule does not fetter the applicable law of evidence to that originally existing at common law. It is contemplated that the law may be modified and adjusted from time to time by judicial decisions."

Since the liberating mandate of the Funk case, all the decisions in which the question here involved has arisen have held that, under present-day concept of the common law exception to the incompetency of a wife's testimony against her husband, his transportation of her in interstate commerce for the purpose of having her engage in prostitution is such a personal wrong against her as to make her testimony admissible in a prosecution of him under the Mann Act. See United States v. Mitchell, 2 Cir., 137 F.2d 1006, reaffirmed 138 F.2d 831, certiorari denied 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 108, rehearing denied 322 U.S. 768, 64 S.Ct. 1052, 88 L.Ed. 1594; United States v. Williams, D.C. Minn., 55 F.Supp. 375; Levine v. United States, 5 Cir., 163 F.2d 992; Hayes v. United States, 10 Cir., 168 F.2d 996. Cf. also Wilhoit v. Hiatt, D.C.Pa., 60 Supp. 664.

Yoder v. United States, 10 Cir., 80 F.2d 665, undertook to go even further and to

declare generally that a wife's testimony may be received against her husband in a criminal case of any nature, subject only to the incompetency of any communications made within the field of marital privilege, where that privilege is asserted. Thouvenell v. Zerbst, 10 Cir., 83 F.2d 1003, approved and repeated this broad view. These two cases involved violations of the Mann Act, so that the testimony of the transported wife would in any event have been admissible under the exception to the common law rule discussed above. Incidentally, Paul v. United States, 3 Cir., 79 F.2d 561, and Brunner v. United States, 6 Cir., 168 F.2d 281 (neither of which was a Mann Act prosecution), have refused to go the length of the doctrine of the Yoder case and to hold that the incompetency of a wife's testimony against her husband should be lifted in all forms of criminal actions, regardless of whether a personal wrong to the wife is involved, with a retention only of the privilege as to confidential communications of the marital relationship. The American Law Institute's Model Code of Evidence, however, like the Yoder case, permits a privilege to be claimed against a wife's testimony only as to confidential communications of the marital relationship. See Rules 214 to 218.

 But readverting to the decision of this Court in the Johnson case, it will be noted that under all of the authorities set out the view of the Johnson case stands alone in the Mann Act field. The formidable, widespread and unanimous array of decision against it makes plain its disharmony with present legal concept and common judicial view. The soundness of the cases opposed to it would seem also to be fortified by the refusal of the Supreme Court on two separate occasions, over an extended period of time, as set out above, to grant certiorari to review the holding of those cases. All of this inescapably persuades that the Johnson case should no longer stand but should be overruled.

It follows that the trial court did not err in refusing to be guided by the Johnson case. Nor does the fact that appellant's wife stated on the stand that she did not wish to testify against her husband in any way affect the situation. As a matter of fact, she did not refuse to testify, so as to require the court to compel her to do so, but, even if she had, this would have made no difference. So far as appellant's rights were concerned, the wife's testimony, as we have indicated, was competent evidence against him, and no legal ground was available to him for objection to it. And the wife herself, like any other witness, was without privilege in the situation to say whether she did or did not wish to testify. (No question of the right of the wife to refuse to testify on the ground of self-incrimination is here involved.)

The right under the common law rule, of an accused not to have his spouse testify against him, and the equal right of such spouse to refuse to do so were privileges created by and having their existence only within the scope of the rule itself. Since the privilege (other than as to confidential communications) existed only by virtue of the rule, it necessarily did not extend in any manner to any situation, such as here, which had been left outside the rule by the exception. The public policy involved, under which it was deemed of more importance to leave the wife's testimony available in the class of offenses encompassed by the exception, than to cloak it with the privilege of the rule, necessarily had as its underlying basis the interest of society generally, and not simply that of the wife individually, so that the wife, not being within the privilege of the rule as to any excepted offenses, naturally in such a situation stood in the same position as any other victim of another's criminal act, in the matter of the state's right to compel her to testify. Cf. Turner v. State, 60 Miss. 351, 45 Am.Rep. 412.

2. Appellant further contends that it was error to receive the written statement which he gave the officers after his arrest, because the evidence did not sufficiently establish that as a confession it was freely and voluntarily made. The trial court, after a preliminary hearing outside the presence of the jury, ruled that the confession was entitled to be admitted in evidence, but it permitted and instructed the jury not to consider the confession, if

they should believe from the testimony as to the circumstances that appellant had not freely and voluntarily made the statements in it and that they were "exacted from him by coercion or by intimidation or any other manner." There is no complaint as to the instructions given in respect to the confession.

■ On the evidence before us, the court was not required to exclude the confession as having been involuntary. The two officers to whom it was given—the one an agent of the Federal Bureau of Investigation and the other a policeman of the city of Texarkana, Arkansas—appear to have testified frankly as to the conditions surrounding the making of the confession, and their testimony was not shaken on cross-examination, nor did appellant either at the preliminary hearing which the court held on the confession or at the trial offer any evidence in contradiction.

According to the officers, they had first taken a detailed statement from appellant's wife, which she signed and which they then exhibited to appellant. Their interrogation of appellant began about 10 p. m., and his extensive transportational activities were traversed and written up, and the statement signed by appellant before 2 a. m. A large part of the time was spent in correlating and writing up the details which appellant revealed, the statement, when completed, having consisted of 19 pages. The FBI agent had advised appellant, before the interview began, that he was not obliged to talk with them or to tell them anything; that whatever he said could be used against him in court; and that it was his right to have the assistance of counsel and to have his lawyer present, if he so desired. He indicated to appellant that there appeared to be some aspects of the situations which needed to be clarified and that it would seem to be in order for appellant to tell the truth at that time, if he was willing to make a statement.

Appellant replied that he did not "see where a lawyer would do me any good;" that he was willing to tell them the truth; and that he had no objection to giving a written statement. Cross-examination only reemphasized that the officers had neither cursed appellant, threatened him, made any promises to him, nor used any force. They admitted that they had told him that, on the basis of his wife's statement, indicating that he had married her before his divorce from his previous wife had become final, it would appear that he also was guilty of bigamy under Arkansas law, but they testified that this was the extent of what was said on that point. The Texarkana policeman further admitted that he had had some trouble in making some previous arrests (not related to the present situation) and had used force in taking the persons involved in those arrests into custody. There is no showing, however, of the use of any force in the arrest or the interrogation of appellant, and the Government's undisputed evidence, as has been indicated, affirmatively shows that none was used or threatened.

■ On all the circumstances which have been detailed, we cannot hold that the court was required to rule that the confession was involuntary. Indeed, it would seem that for the trial court to have made such a ruling as a matter of law would in the situation presented hardly have been justifiable. A court should not declare a confession involuntary as a matter of law, even though the jury has the right to reject consideration of it, where the conditions under which it has been made are not such as would normally destroy free will and self-control, and where the circumstances do not on a preliminary investigation tend to persuade that it has been the product of fears or hopes from compulsion or inducement of any sort. Cf. Hopt v. Utah, 110 U.S. 574, 585, 4 S.Ct. 202, 28 L.Ed. 262; Wilson v. United States, 162 U.S. 613, 623, 16 S.Ct. 895, 40 L.Ed. 1090. The law has not yet ceased to recognize that the easing of conscience by confession, as a matter of initial reaction after an arrest, frequently constitutes the impelling motive for a transgressor's willingness to admit his guilt.

3. The contention also is made that the trial court erred in denying appellant's motion to require the Government to furnish him, prior to the trial, with a copy of the statement or confession which he had given the FBI agent.

■ The common law recognized no right of discovery in criminal cases. Rex v. Holland, 4 T.R. 691, 100 Eng.Reprint 1248. Cf. also United States v. Rosenfeld, 2 Cir., 57 F.2d 74. On the specific question here involved, of an accused's right to demand a copy of the confession he has made, the state courts generally, which have considered the question, have held that the accused cannot require the prosecution to furnish him before trial with a copy of his confession. See Annotation, 52 A.L.R. 211, 212. And on discovery more generally, the Supreme Court has declared, in a case where the accused had been denied the right to inspect before trial the notes and memoranda of federal agents made during investigation, that "The judge was clearly right in his ruling * * * as the petitioners should not have had access, prior to trial, to material constituting a substantial portion of the Government's case." Goldman v. United States, 316 U.S. 129, 132, 62 S.Ct. 993, 995, 86 L.Ed. 1322.

The Goldman opinion went on to say that, even at the trial itself, "where a witness does not use his notes or memoranda in court, a party has no absolute right to have them produced and to inspect them," but it further added that, where such notes or memoranda "are also a part of the Government's files," the trial court has "a large discretion" on the trial as to whether the accused shall be permitted to inspect them in connection with the witness' testimony, even though the latter has not used them on the stand. Id. An even more rigid view had previously been expressed by this Court in Lennon v. United States, 8 Cir., 20 F.2d 490, 493, 494, and Little v. United States, 8 Cir., 93 F.2d 401, 407.

Judge Learned Hand, in the opinion in United States v. Krulevitch, 2 Cir., 145 F.2d 76, 78, 156 A.L.R. 337, emphasized the distinction between the right to pretrial discovery and that of inspection at the trial itself, in relation to written statements generally, in this language: "It is one thing to say that an accused shall in advance of trial have inspection of statements of witnesses taken by the prosecution in preparation of its case; it is another to deny him the benefit of so much of such statements as is shown to be inconsistent with the witnesses' testimony on the stand, and would impeach them," even though such statements have not been used by the witnesses in testifying or by the Government in its interrogation of them.

But appellant would distinguish between the discovery right before trial of an accused to a copy of his own confession and his right to copies of the statements of witnesses generally which the Government has taken. He argues that a confession falls within Rule 16, Federal Rules of Criminal Procedure, 18 U.S.C.A. promulgated subsequent to the cases to which we have referred. That rule provides: "Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable."

■ In a general sense, of course, a confession may be regarded as a paper or document "obtained" from the defendant. But reading the language of the rule in the light of the history involved in its formulation and in its context, we do not believe that such was its intended legal connotation and purpose here. The Notes of the Advisory Committee undertook to point out that it was doubtful whether discovery was permissible in criminal cases under existing law, and then added, as to the intended scope of the formulated rule, the following: "The courts have, however, made orders granting to the defendant an opportunity to inspect impounded documents belonging to him. * * * The rule is a restatement of this procedure. In addition, it permits the procedure to be invoked in cases of objects and documents obtained from others by seizure or by process, on the theory that such evidential matter would probably have been accessible to the defendant if it had not previously been seized by the prosecution. The entire

matter is left within the discretion of the court."

In the Preliminary Draft of the Rules which the Advisory Committee initially prepared and submitted to the bar and the bench for consideration and suggestion, a rule (then Rule 19) was proposed allowing discovery as to "any designated books, papers, documents, or tangible objects, not privileged," without the qualification added in the later drafts, "obtained from or belonging to the defendant or obtained from others by seizure or by process." Paralleling the indication of the scope of the final draft of the rule contained in the Notes of the Advisory Committee, one of the members of that Committee, at the searching Institute held on the Rules at New York University School of Law in February, 1946, summarized the effect of the rule and its qualification, as "protecting the right of the defendant to have access to his own papers, to his own property, as well as to property seized from others by process, which may be material to his defense." See New York School of Law Institute Proceedings, Vol. VI, p. 167.

There were some members of the profession throughout the country who seemed to think (unsoundly, probably) that the long, historical denial of the right of discovery in criminal cases made any such general opening of it as the Preliminary Draft had proposed an invasion of the substantive field rather than merely a change in the areas of procedure. The comment of the Committee in its Notes to the final draft has been previously mentioned, that "Whether under existing law discovery may be permitted in criminal cases is doubtful."

On the language finally used and its relation to all this background, it would seem fair to say, we think, that, within the concept of the Advisory Committee and the understanding of the profession generally at the time, Rule 16 was neither intended nor regarded as having application to a confession. And in this connection, the observation is perhaps pertinent that a confession is not something of which there has been an appropriation from the defendant of any previous right of posses-

sion, nor is it in a legal sense anything "belonging" to him. It is not the physical object but merely the contents which the defendant has supplied.

All these considerations tend to persuade that in its present form Rule 16 does not create in the defendant a right before trial to demand a copy of his confession. Such also has been the construction of the only other reported cases, in which the question has been considered. See United States v. Chandler, D.C.Mass., 7 F.R.D. 365; United States v. Black, D.C.Ind., 6 F.R.D. 270, 271 (the latter probably improperly, however, viewing the phrase "by seizure or process" as a qualification of the language "obtained from or belonging to the defendant").

Perhaps, as a matter of fundamental fairness, a defendant ought in enlightened criminal administration to be granted the right to have a copy of his confession in any case. But that broad question is not the one with which we are now dealing. Our holding here simply is that, in its present form, Rule 16 does not provide any such right. And even if a confession had been within the rule, it still would have to be remembered that any right under the rule was not an absolute one but one resting in the court's discretion. Nor in that situation would it have been possible in the present case to claim that it would constitute an abuse of discretion to deny appellant a copy of his confession.

While appellant's motion alleged that a copy of his confession was necessary to enable him to "prepare and present his defense," neither the contents of the confession nor any circumstance indicated by the evidence generally could be said to suggest any possible thread of presentable defense. Even without the confession, appellant's guilt was absolutely established by his wife's testimony, which she reluctantly gave and which appellant in no way, through cross-examination or otherwise, undertook to impeach. And there were no circumstances that even in the slightest degree tended to extenuate the facts to which she testified. Furthermore, on the admission of the confession, appellant made no claim that time was needed to try to

meet the facts recited in it. On the record, therefore, appellant could not have argued any possibility of handicap or prejudice from his failure to have been furnished a copy of the confession before trial.

In holding, as we have, that Rule 16 does not create in a defendant the right to demand before trial a copy of his confession, the observation may be added that we are not intending thereby to imply that a federal court does not have the power in any situation to require the Government to furnish the defendant with a copy of his confession before trial. We think that such a power of control over a confession and its use does exist in a judicial proceeding, as part of the inherent nature and dignity of our system of administering criminal law, and that even without any rule or statute, therefore, the court is not powerless to require the Government to furnish the defendant with a copy of his confession, if the Government intends to use it as evidence on the trial and where the court deems it necessary in the interest of justice that the defendant should be furnished with a copy.

The court's relation to and control of a confession, by virtue of the nature and status of such an instrument, would seem to be different inherently than as to the ordinary elements of the Government's case. In the first place, the obtaining of a confession is made possible only because of the custody which the law affords. Again, the law recognizes the delicacy involved in such a situation and imposes a special official responsibility in relation to its taking. Objective standards of validity must also be met, and it is only on the basis of the confession being possessed of such a validity that it is at all recognized as legally bespeaking any truth. And as an implement of conviction, its truth certainly ought to have the strength to stand up, even after a defendant's rereading of it. Such a statement by a defendant, therefore, manifestly is more than a mere part of the "catch-as-catch-can" preparation or personal "work product" of a case, into which our American forensic concepts have been traditionally reluctant, more so even in criminal than in civil cases, to permit any adversarious prowling.

An exercise of the power to require the Government to furnish the defendant with a copy of his confession would of course, be wholly a matter of judicial grace. There could hardly be any need to exercise it, where the attempt to obtain a copy manifestly was simply a part of a blunderbuss-roving, so that the privilege thereby would tend to reach the stature of an absolute right. But there may be cases where the circumstances are such that the judicial conscience properly feels that the interest of justice will be best served by allowing the defendant before trial to have a copy of his confession.

4. The only other contention here that requires consideration is the alleged error of the court in admitting in evidence some receipts, telegrams and other papers, which had been taken from appellant's luggage without a search warrant. The court did not err in receiving the instruments. First of all, appellant had not made a motion prior to the trial to suppress their use, such as Rule 41(e), Federal Rules of Criminal Procedure, contemplates, in its provision that "The motion [to suppress evidence on the ground of illegal seizure] shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." And if it can be said that the court did in fact entertain the motion on its merits at the trial, the evidence clearly sufficiently justified the finding, which must be implied in that situation, that the search of appellant's luggage was made with his consent and was therefore not illegal. The FBI agent testified uncontradictedly that the luggage was removed from appellant's car at appellant's request, and that it was not searched until after appellant had been asked whether he was willing to permit it to be searched and he had given his consent. Evidence obtained as the result of a search to which the defendant is shown to have given his consent is not entitled to be suppressed as being the product of an illegal search and seizure. Cf. Ruhl v. United States, 10 Cir., 148 F.2d 173, 174.

846

5. What has been said above as to the admissibility of appellant's wife's testimony and of his confession disposes of the contention that the court should have granted the motion which appellant made for a directed verdict of not guilty. It disposes also of appellant's contention that the only competent evidence against him was circumstantial evidence and that he therefore, on the basis of there being no direct proof, was entitled to have had given the customary instruction on circumstantial evidence which he requested.

Affirmed.