## UNITED STATES v. IOZIA.

United States District Court
S. D. New York.

Dec. 10, 1952.

See also 104 F.Supp. 846.

Myles J. Lane, U. S. Atty., New York City, for the United States. John D. Kelly, Asst. U. S. Atty., New York City, of counsel.

Louis Bender, New York City, for defendant. Arthur Karger, New York City, of counsel.

### WEINFELD, District Judge.

The defendant is under a three-count indictment for income tax evasion. The first two counts charge that the defendant as President of the Housatonic Dyeing & Printing Co., Inc. (hereafter referred to as Housatonic) caused to be filed false excess profit returns for the fiscal years ending August 31, 1943 and August 31, 1945. The third count charges the filing of a false individual return for the calendar year 1945. The basis of the charge under each count is unreported income received by the taxpayer and representing the proceeds of unrecorded sales made by Housatonic to a partnership known as D. Brody & Co.

The defendant has served upon the United States Attorney a subpoena duces tecum for certain documents, materials and records purportedly pertaining to the charges. He now moves (1) for an order, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, 18 U.S.C., permitting him to inspect and copy or photograph those documents, designated in the subpoena which were obtained from the defendant or from third parties by seizure or by process; and

(2) for an order, pursuant to Rule 17(c) of the Rules, directing the United States Attorney to produce and make available for inspection before trial other documents itemized in the subpoena and allegedly in the possession of the United States Attorney.

The Government has consented to produce the documents and records described in the subpoena duces tecum as items 1 to 5 inclusive, 8, and that portion of 7 covering documents obtained from either Housatonic or the Brody partnership by process or seizure. This meets the defendant's application made under Rule 16.

The Government resists the balance of the motion insofar as it relates to items 6, the balance of 7, and 9 to 14 inclusive, whose production is sought under Rule 17 (c). These items pertain to records, documents, correspondence and files obtained from David Brody and Max Kossov, the partners of D. Brody & Co., and Richard Reynolds and Gustave Hordes, two former officers of Housatonic. These documents were not obtained through process but were voluntarily turned over to the Government. Also opposed under this branch of the motion is the request for reports of Government agents relating to tax and other investigations made by them of the two Brody partners and the two former officers of Housatonic.

In support of his motion, the defendant leans heavily upon the recent case of Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879. The holding is to the effect that any material in the possession of the Government that has been used before the Grand Jury or could be used upon the trial is within the reach of process of a defendant under Rule 16 and 17. Those documents which were obtained from the defendant or others by seizure or process are subject to discovery and production under Rule 16 upon "a showing that the items sought may be material to the preparation of his defense and that the request is reasonable." Those documents obtained by the Government by solicitation or voluntarily are subject to subpoena by a

defendant under Rule 17(c) and under appropriate circumstances their production and inspection may be compelled.

■ Rule 17(c), unlike Rule 16, does not in express terms cast upon a defendant the burden of "a showing that the items sought may be material to the preparation of his defense and that the request is reasonable." The defendant urges that under the holding of the Bowman case, all documents which are subject to subpoena under Rule 17(c), under the test there applied, are also subject to inspection by the defendant as a matter of right. I do not so construe that authority. It does not authorize a rummaging through the files of the prosecution at will. Whether inspection should be permitted is still in the Court's discretion. The fact that Rule 16 enumerates the standards which govern discovery and inspection thereunder, whereas Rule 17(c) omits any reference thereto, does not compel a contrary conclusion. Rule 17(c) provides that the Court "may" direct the production prior to trial of books, papers, documents or objects designated in the subpoena and upon their production "may" permit inspection. Finally, the Supreme Court in the Bowman case stated: "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. * * * [It] was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials." 341 U.S. at page 220, 71 S.Ct. at page 679. Thus, there must be a showing of good cause to entitle the defendant to production and inspection of documents under Rule 17(c).

■ Good cause, in my opinion, requires a showing by the defendant,

(1) That the documents are evidentiary and relevant;

(2) That they are not otherwise procurable by the defendant reasonably in advance of trial by the exercise of due diligence;

(3) That the defendant cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial;

(4) That the application is made in good faith and is not intended as a general fishing expedition.

■ In passing upon the issue of good cause, countervailing considerations might come into play. For example, it may become important to protect confidential sources of information and the method, manner and circumstances of the Government's acquisition of the materials.[1] We appraise the defendant's motion against the foregoing criteria.

Items 6 and 7, as modified, may be considered together. As already noted, the indictment, as limited by the bill of particulars, is bottomed upon the receipt by Housatonic and the individual defendant of unreported income derived from "unrecorded" sales made to D. Brody & Co. The bill of particulars also alleges that the payments were made to the defendant by Brody, Kossov, or both. Under items 6 and 7, the defendant seeks various documents and other records now in the possession of the United States Attorney, which were obtained from Gustave Hordes and Richard Reynolds or any one else relating to their employment for, and their activities with, Housatonic, as well as relating to any transactions had between them and Brody and Kossov.

■ Reynolds is a former officer, stockholder and employee of Housatonic. As such officer and employee, according to the defendant, he participated in sales of remnants, particularly to D. Brody & Co. Accordingly, the defendant contends that any records supplied by Reynolds, while employed by Housatonic, are essential to his

1. See Bowman Dairy Co. v. United States, 341 U.S. 214, at page 221, 71 S.Ct. 675, 95 L.Ed. 879; Cf. United States v. Schneiderman, D.C., 104 F.Supp. 405, 408–409.

defense since they may contain exculpatory material. This contention finds little support in the facts. Reynolds severed his relationship with Housatonic in May 1942, which is prior to the period covered in the first count of the indictment—September 1, 1942 to August 31, 1943. A central issue is the unreported income for that fiscal period, allegedly received by the defendant from D. Brody & Co., to which income derived from sales made prior thereto has at this stage in the proceedings little relevance.

After leaving Housatonic, Reynolds was employed from May 1942 to 1946 by Sussex Dye & Print Works, during which time, the defendant further asserts, Reynolds supervised the sale of remnants and damaged goods to D. Brody & Co., among others. The sole basis on which defendant relies to secure the documents relating to Reynolds' participation in transactions with D. Brody & Co. during his employment with Sussex Dye & Print Works is the assertion that "a serious issue in this case will be whether the remnants which the Government charges were sold by Housatonic to D. Brody & Company were not actually sold to D. Brody & Company by others such as Sussex Dye & Print Works." But proof that Sussex Dye & Print Works or any other firm sold to D. Brody & Co. certain remnants is not proof that defendant did not receive the payments claimed to have been made to him by Brody, Kossov, or both. But separate and apart from this, the Government's reply affidavit charges the defendant with lack of good faith in making the quoted assertion. It sets forth that the Government has supplied the defendant with various documents, invoices, adding machine tapes of Housatonic and the books and records of D. Brody & Co. pertaining to shipments to the latter, all of which establish that the sales upon which the charges in the indictment are based were, in fact, made by Housatonic to D. Brody & Co.

Further, the Government has consented to an examination and inspection of documents and other data supplied to it by Brody and Kossov in connection with their alleged transactions; and, finally, Housatonic's and the defendant's records are available to the defense. All these clearly should supply the information required by the defendant for proper preparation on this issue. I am satisfied that the documents requested with respect to Reynolds during the period of his employment with Sussex Dye & Print Works are not evidential and material and in any event are not required in the preparation of the defense. Should Reynolds be called as a witness, the Court may then examine the documents and if exculpatory matter is contained therein, they will be available to the defense.[2]

■ A different situation exists with respect to Hordes, who was Treasurer of Housatonic until December 1943. He was engaged principally in the purchase of raw materials for the operation of the plant. The defendant states he has reason to believe that some employees of Housatonic engaged in irregular practices with D. Brody & Co. in connection with certain shipments of remnants without the knowledge of the corporation; that during this period Hordes was in the best position to know what was transpiring at the plant; and, finally, the defendant asserts that he has tried, but unsuccessfully, to obtain the documents or the sought-for information from Hordes. The latter occupied an important position during the time it is asserted irregularities with Brody occurred. Such irregularities may be closely related to the subject matter of the indictment. While it is true that the irregular practices of others, or the commission of offenses by third parties, would hardly serve to exonerate this defendant of the crime charged in the indictment, inspection appears necessary for the proper preparation for trial.

2. United States v. Krulewitch, 2 Cir., 145 F.2d 76, 78, 156 A.L.R. 337; United States v. Schiller, 2 Cir., 187 F.2d 572, 575; Shores v. United States, 8 Cir., 174 F.2d 838, 844, 11 A.L.R.2d 635.

It may establish that such employees, rather than the defendant, were the recipients of the income derived from such sales. I am satisfied that the allegations in the supplemental affidavit with respect to Hordes constitute good cause for the production of the items requested in clauses 6 and 7, but limited to that period of employment with Housatonic as falls within the indictment—that is, September 1, 1942 to December 1943.

Items 9 to 13 seek the production of reports and memoranda with respect to audits and investigations made by the agents of the Internal Revenue Bureau and the Department of Justice relative to the income tax returns of Brody, Kossov, Hordes and Reynolds for the years 1940 to 1951; and copies of such returns for the said year. Item 14 seeks all information in the Government files regarding any past, pending or contemplated criminal prosecutions of these four persons.

This very broad request for the files of Government investigating agencies covering a period of eleven years, whereas the indictment covers three years,[3] has every appearance of a fishing expedition. The Government opposes not alone on that ground, but also upon a plea that they contain confidential matter protected by executive or administrative orders and regula-

tions.[4] The defendant justifies the request for the documents on the ground they are essential to his defense; that, in the event any or all of the persons referred to are called as prosecution witnesses, the documents may contain exculpatory matter or other evidence showing bias and interest or hostility towards the defendant.[5] In particular, United States v. Beekman, 2 Cir., 155 F.2d 580, 584, is relied upon on the ground that the investigative reports of the activities of the four named individuals may contain evidence that they "have been disciplined by * * * a government agency, and * * * might be facile witnesses against other alleged offenders." I do not believe that the Beekman case or other leading authorities [6] which, in effect, require the Government either to disclose confidential information of aid to a defendant in resisting charges against him, or to risk termination of the prosecution, are to be extended, in the absence of unusual circumstances, so as to require in advance of, and in preparation for, trial a disclosure to a defendant of information which may tend to impeach persons the Government may or may not call as witnesses. Should any of the persons testify upon the trial, the documents will be available for inspection by the Court in camera to determine whether they contain matter helpful to the defense.[7]

3. In the instance of two counts the fiscal years and August 31st, 1943 and August 31st, 1945, and in the third count the calendar year 1945 are in issue.

4. Pursuant to 5 U.S.C.A. § 22, both the Attorney General, by Order #3229 and Supplement 2, dated June 6th, 1947, and the Secretary of the Treasury, by § 55 (f) (1), Title 26, Regulation 111, § 29.55 (f) (1), promulgated regulations declaring the information sought to be obtained as confidential. See United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417.

5. United States v. Beekman, 2 Cir., 155 F.2d 580, 584.

6. United States v. Grayson, 2 Cir., 166 F. 2d 863, 870; United States v. Krulewitch, supra, footnote 2; United States v. Andolschek, 2 Cir., 142 F.2d 503, 506; United States v. Nugent, 2 Cir., 200 F.2d

7. Cf., United States v. Krulewitch, supra, footnote 2, 145 F.2d at page 78: "It is one thing to say that an accused shall in advance of trial have inspection of statements of witnesses taken by the prosecution in preparation of its case; it is another to deny him the benefit of so much of such statements as is shown to be inconsistent with the witnesses' testimony on the stand, and would impeach them." Thus, the Court in the Krulewitch case indicated that there are considerations involved in a determination of whether to order the production of impeaching documents upon the trial, after their relevance has been established, which are not present in a determination of whether to compel their production before trial. See Shores v. United States, supra, footnote 2, 174 F.2d at page 843.

Experience demonstrates that this procedure causes no undue delay in the progress of a trial and it affords full protection to the defendant. Under these circumstances, the application for the production of items 9 to 14 is premature.

This disposition makes it unnecessary to determine the issue whether the income tax returns of private individuals requested in item 12 are privileged, notwithstanding 26 Code of Federal Regulations § 458.204, where such individuals are not parties to a litigation or prosecution. The determination of this issue, too, shall await the trial.

The motion is granted only as to the documents described in items 6 and 7 which relate to Gustave Hordes for the period from September 1, 1942 to December 1943, and those items consented to by the Government. In all other respects the motion is denied.

Settle order on notice.