**UNITED STATES of America**

v.

**LOUIS TRAUTH DAIRY, INC., and David E. Trauth.**

No. CR–1–94–52.

United States District Court, S.D. Ohio, Western Division.

March 23, 1995.

Donald L. Stepner, Adams, Brooking, Stepner, Woltermann & Dusing, Covington, KY, for H. Meyer Dairy Co.

Frederick Jaeger McGavran, Frost & Jacobs, Cincinnati, OH, for Adams, Brooking, Stepner, Woltermann & Dusing.

Robert W. Carran, Covington, KY, for Reynold L. Knasel.

G. Jack Donson, Jr., Taft, Stettinius & Hollister, Cincinnati, OH, for Louis Trauth Dairy, Inc.

Robert M. Stephenson, Cotsirilos, Stephenson, Tighe & Streicker, Ltd., Chicago, IL, for David E. Trauth.

### ORDER GRANTING MOTIONS TO QUASH

SPIEGEL, District Judge.

## MOTIONS CONSIDERED

This matter is before the Court on the Motion to Quash Subpoena Issued to Adams, Brooking, Stepner, Wolterman & Dusing (doc. 56), the H. Meyer Dairy Company, Inc.'s Motion to Quash or Modify Defendant Trauth Dairy Company's Subpoena (doc. 57), the Memorandum of the United States in Support of Motions to Quash (doc. 59), the Defendants' Response to the Adams, Brooking, Stepner, Wolterman & Dusing Motion to Quash (doc. 60), the Defendants' Response to the Trauth Dairy Company Motion to Quash (doc. 61), Defendants' Reply to the Memorandum of the United States (doc. 62), the Reply Memorandum of Adams, Brooking, Stepner, Woltermann & Dusing (doc. 63), the Reply Memorandum of H. Meyer Dairy Company (doc. 64), and the Defendant's Supplemental Response to the Motion to Quash Subpoena Issued to the Law Firm (doc. 67).

## BACKGROUND

Previously, we approved a procedure by which the Defendants could issue subpoenas, under Rule 17 of the Federal Rules of Criminal Procedure. *See* Order of Dec. 7, 1994, Document 53. In that Order we indicated that any recipient could oppose such a subpoena. In addition, we granted the United States the opportunity to join any recipient in opposition. In accord with this procedure, the Defendants have served subpoenas for documents on the H. Meyer Dairy Company ("Meyer Dairy") and on the law firm of Adams, Brooking, Stepner, Woltermann & Dusing ("Adams, Brooking"). Adams, Brooking is a Northern Kentucky law firm which has long served as attorneys for Meyer Dairy and David Meyer, a key witness for the United States in this case. These two recipients of subpoenas have now moved to quash, and the Government has filed a memorandum on their behalf. Having examined the able arguments presented by all parties, we find that the Defendants have not, in most instances, met their burden of showing that these subpoenas are appropriate under Rule 17. Therefore, except for one specific request for financial information from Meyer Dairy Company, Inc., these motions to quash are granted.

## STANDARD OF REVIEW

A party seeking production of documents under Federal Rule of Criminal Procedure 17(c) must establish good cause for advance production of the materials subpoenaed. *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y.1952). The party seeking production must establish that the subpoena seeks relevant, admissible documents which have been requested with adequate specificity. *United States v. Nixon*, 418 U.S. 683, 700, 94 S.Ct. 3090, 3103–3104, 41 L.Ed.2d 1039 (1974). The *Nixon* case established that the party seeking evidence under Rule 17(c) must show that:

(1) that the documents are evidentiary and relevant;

(2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699–700, 94 S.Ct. at 3103.

■■■ The ordinary vehicle for obtaining pretrial discovery under the Federal Rules of Criminal Procedure is Rule 16. Rule 17(c) "is not intended to provide an additional means of discovery." *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir.1992). The need for evidence to impeach witnesses is insufficient to require advance production under Rule 17(c). *Nixon*, 418 U.S. at 701, 94 S.Ct. at 3104. Finally, the Court may weigh other considerations in making a determination of good cause sufficient to enforce a subpoena. One matter to be weighed is the protection of confidential sources of information. *Iozia*, 13 F.R.D. at 338. The Court may also weigh the relative burden of production upon the recipient of the subpoena. *United States v. Kalter*, 5 F.3d 1166, 1169 (8th Cir.1993).

## DISCUSSION

The Defendants are charged with conspiring to fix milk prices in violation of criminal antitrust statutes. Meyer Dairy is alleged to be an unindicted co-conspirator. The Defendants have issued two subpoenas, which are the subject of these separate motions to quash. The first is directed toward the H. Meyer Dairy Company and the other to the law firm which represents Meyer Dairy. Both Meyer Dairy and the law firm have filed motions to quash, and the Government has offered a brief in support. We note that Meyer Dairy has already produced some requested documents and has indicated a willingness to produce others. In regard to the contested documents, we find that the motions to quash should be granted except in one limited respect.

### A. Undisputed Documents

The Defendants have requested certain items which either have already been provided through the previous release of documents by the Government, or the production of which Meyer Dairy does not oppose. These include certain rolodexes, telephone logs and similar items, travel and entertainment vouchers, and agreements relating to the merger of Meyer Dairy with Cloverleaf–Hanneken Dairy, Cedar Hill Farms, Wilson Dairy or Cloverleaf Dairy of Maysville, Kentucky. Therefore, the motion to quash in regard to these documents is moot.

### B. Documents for Impeachment Purposes

The Government intends to present the testimony of certain executives of the Meyer Dairy ("Meyer witnesses"), who claim to have conspired with the Defendants to fix prices. The Defendants have indicated that they intend to attack the credibility of these witnesses. For a number of years, the Meyer witnesses denied the existence of a conspiracy, then simultaneously they changed their testimony, plead guilty to federal criminal charges, and settled their respective civil lawsuits. The Defendants maintain that these witnesses in fact are conspiring to use this criminal prosecution to the competitive advantage of Meyer Dairy against Defendant Trauth Dairy.

■■ A significant portion of the documents requested in the subpoenas concern negotiations in Meyer Dairy's antitrust litigation with the states of Ohio and Kentucky and with the United States. In particular, the subpoenas request information concerning the settlement negotiations in these cases. It seems clear that the intent in attempting to collect these materials is to impeach the testimony of the Meyer witnesses. As we noted above, the need for evidence to impeach witnesses is insufficient to require advance production under Rule 17(c). *Nixon*, 418 U.S. at 701, 94 S.Ct. at 3104. Therefore, requests for documents for the purpose of impeachment must be quashed.

■■ Additionally, in determining whether a defendant has demonstrated good cause for the enforcement of a subpoena, the Court may grant a motion to quash in order to

protect confidential sources of information. *Iozia*, 13 F.R.D. at 338. Most of the documents which are intended to establish bias on the part of the Government's Meyer witnesses are in the hands of Meyer's attorneys at Adams, Brooking. That law firm has argued vigorously that they are ethically bound not to divulge confidential information about a client. They further argue that such information is protected under theories of attorney-client privilege and attorney work product. We have weighed these confidentiality concerns in our determination to quash the subpoenas at issue here.

### C. Quality Control Documents

A final category of documents requested by these subpoenas is documents concerned with the operation of the Meyer Dairy Company, in particular quality control records. These include documents concerning compliance with governmental quality standards and internal data concerning quality control. Here the Defendants have failed to meet the burden of specificity and relevance. *See Nixon*, 418 U.S. at 699–700, 94 S.Ct. at 3103–3104 (documents must be evidentiary and relevant, and not intended as a general "fishing expedition"). The Defendants argue that if they can prove that Meyer Dairy sold a substandard product, this is evidence of competition which would exonerate the Defendants of the charge of price fixing.

■ We find the logic of the Defendants' argument strained. We see no reason why price fixing and selling substandard product are per se incompatible. In fact, if the Defendants allocated markets, as the Government contends, the temptation to provide substandard products could be substantially increased. Against the Defendants weak showing of relevance, we must weigh the substantial intrusion on Meyer Dairy's confidential business records and the resulting danger of unfair business advantage to the Defendant dairy, as well as, the burden on Meyer Dairy of production of some twenty years of records. *See Iozia*, 13 F.R.D. at 338 (confidentiality); *United States v. Kalter*, 5 F.3d 1166, 1169 (8th Cir.1993) (burden of production). Therefore, we find that the De-

fendant's subpoena of quality control records should be quashed.

### D. Documents Subsequent to the Period of Alleged Price Fixing

■ While the period during which the Government alleges violations ends in 1989, many of the documents requested by the Defendants were created substantially later. Some requests are for current documents. In general the Defendants have failed to show good cause why these later records are relevant to their case. However, we will deny the motion to quash in regard to one item. The Defendants have requested "general financial statements," including balance sheets and profit and loss statements, federal and state income tax returns of Meyer Dairy. From the beginning, the Defendants have asserted that they intend to disprove the Government's allegations of conspiracy to fix prices by demonstrating that the dairies were in fact competing throughout the period. They have indicated that they intend to make this proof through a comparison of financial data. They argue that they need to compare financial statements during the period when the alleged conspiracy took place with those in the period immediately following. The Defendants state:

> Specifically, the requested items will provide summary information on gross sales, cost of sales, gross profit, and operating income for post conspiracy years. In turn, that information and earlier summary financial data already surrendered to defendants for the alleged conspiracy years, when compared to like information form Trauth Dairy, will show the respective financial performance of Meyer Dairy and Trauth Dairy in the alleged conspiracy and post conspiracy years and the results, of what defendants contend, was a competitive market. In addition, Meyer Dairy financial statements for the years 1990, 1991 and 1992 contain actual denials to customer allocation allegations.

Defendants' Response to Meyer Dairy's Motion to Quash, at 8–9, Document 61. We find merit in the Defendants' argument.

Originally, Meyer Dairy opposed this subpoena request categorically as overbroad.

The Defendants, in their response to Meyer Dairy's Motion to Quash, asserted that they sought only "summary information" necessary to make a comparison with the financial data during the alleged conspiracy years. In their Reply, Meyer Dairy has suggested a middle ground:

> Finally, should the Court determine that MEYER DAIRY must produce annual financial reports and annual tax returns to TRAUTH DAIRY, it should limit production of documents to the years 1991 and 1992 while permitting MEYER DAIRY to redact any information contained in those documents which does not provide summary information on gross sales, costs of sales, gross profit and operating income.

Meyer Dairy's Reply at 10–11, Document 64. We find Meyer Dairy's suggested limitation to be appropriate. Under this limitation, the Defendants would be provided with financial data necessary to establishing their theory, while Meyer Dairy would be protected both from the production of sensitive matters included in the 1991 and 1992 reports and from production of more recent financial reports and tax returns, which could be used by the Defendants to their advantage in the marketplace.

### CONCLUSION

Accordingly, within the limitations described above, Meyer Dairy's Motion to Quash is DENIED in respect to summary financial data and tax returns for the years of 1991 and 1992. In all other respects, however, both Meyer Dairy's Motion to Quash and the Motion to Quash of Adams, Brooking, Stepner, Woltermann & Dusing are GRANTED.

SO ORDERED.