UNITED STATES of America

v.

John N. MITCHELL et al.

Crim. No. 74-110.

United States District Court,
District of Columbia.

May 20, 1974.

Certiorari Granted June 15, 1974.

See 94 S.Ct. 3162.

See also D.C., 377 F.Supp. 1312.

James D. St. Clair, Sp. Counsel to the President, Michael A. Sterlacci, John A. McCahill, Jerome J. Murphy, Jean A. Staudt, Eugene R. Sullivan, Washington, D. C., for movants.

Leon Jaworski, Sp. Prosecutor, Philip A. Lacovara, Counsel to the Sp. Prosecutor, James F. Neal, Sp. Asst. to the Sp. Prosecutor, Richard Ben-Veniste, Asst. Sp. Prosecutor, Watergate Sp. Prosecution Force, Washington, D. C., for the United States of America.

William G. Hundley, Washington, D. C., for defendant John N. Mitchell.

John J. Wilson, Frank H. Strickler, Washington, D. C., for defendant Harry R. Haldeman.

William S. Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, Fla., for defendant John D. Ehrlichman.

Sidney Dickstein, Washington, D. C., for defendant Charles W. Colson.

David G. Bress, Washington, D. C., for defendant Robert C. Mardian.

**1328**

Jacob A. Stein, Washington, D. C., for defendant Kenneth W. Parkinson.

John M. Bray, Washington, D. C., for defendant Gordon Strachan.

## OPINION AND ORDER

SIRICA, District Judge.

This matter comes before the Court on motion of President Richard M. Nixon to quash a subpoena *duces tecum* issued to him by the Watergate Special Prosecutor with leave of this Court.

On April 16, 1974, Special Prosecutor Leon Jaworski moved the Court for an order, pursuant to Rule 17(c),[1] Federal Rules of Criminal Procedure, directing the issuance of a subpoena for the production of specified materials prior to trial in the case of United States v. John N. Mitchell, et al., CR 74–110, DDC.[2] The proposed subpoena, prepared by the Special Prosecutor and directed to the President "or any subordinate officer, official, or employee with custody or control of the documents or objects" described, listed in 46 paragraphs the specific meetings and telephone conversations for which tape recordings and related writings were sought. Relying on the legal memorandum and affidavit of the Special Prosecutor in support of the motion, the Court on April 18, 1974, ordered that the subpoena issue forthwith to the President commanding production before the Court.

Prior to the May 2, 1974, return date of the subpoena, the President filed a Special Appearance and Motion to Quash (eo nomine) which included a formal claim of privilege against disclosure of all subpoenaed items generally as "confidential conversations between a President and his close advisors that it would be inconsistent with the public interest to produce."[3] Thereafter, within time limits fixed by the Court, the Special Prosecutor and five defendants filed papers opposing the President's motion to quash on various grounds.[4] The government's submission, containing a lengthy and detailed showing of its need for the subpoenaed items and their relevance, has been placed under seal as have the various reply briefs and motions for protective orders and to expunge that were subsequently filed.[5] The matter

1. Rule 17. Subpoena
   (c) For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

2. The motion asked that the subpoenaed materials be ordered produced before the Court with permission granted to Government attorneys to inspect them. Three of the seven defendants in United States v. Mitchell have filed motions joining in that of the Special Prosecutor with the stipulation that materials produced be made available to the defendants in full. A fourth defendant filed a response in support of the subpoena, but in, opposition to the Special Prosecutor's motion insofar as it failed to assure defendants access to the materials upon production.

3. The document noted, however, that "[p]ortions of twenty of the conversations described in the subpoena have been made public and no claim of privilege is advanced with regard to those Watergate-related portions of those conversations."

4. Defendant Strachan also filed a motion for an order directing the issuance of a subpoena identical to that of the Special Prosecutor in the event that enforcement of the government subpoena is abandoned.

5. Although initially accepted under seal, the Court has released those portions of briefs relating to the jurisdictional issue of "intra-executive controversy" discussed in the text below.
   The Court has granted a motion of the Special Prosecutor made pursuant to Rule 6(e), Federal Rules of Criminal Procedure, for leave to disclose grand jury proceedings as necessary in support of the subpoena with the proviso urged by defense counsel that, for the present, such disclosures not be made public.

came on for oral argument *in camera* on May 13, 1974.

In entering a special appearance, the President contends that the Court lacks jurisdiction to enforce the instant subpoena on two grounds: First, courts are without authority to rule on the scope or applicability of executive privilege when asserted by the President, and Second, a dispute between the President and Special Prosecutor regarding the production of evidence is an intra-branch controversy wholly within the jurisdiction of the executive branch to resolve. The first contention, as the President admits, is without legal force in this Circuit.[6] See Nixon v. Sirica, 159 U.S.App.D.C. 58, 487 F.2d 700 (1973).

■ The second argument, whatever its merits in the setting of a disagreement between the President and a cabinet officer, for example, has no application to the present situation. The current Special Prosecutor is vested with the powers and authority conferred upon his predecessor pursuant to regulations which have the force of law.[7] Among other prerogatives, the Special Prosecutor has "full authority" to determine "whether or not to contest the assertion of 'Executive Privilege' or any other testimonial privilege." The Special Prosecutor's independence has been affirmed and reaffirmed by the President and his representatives,[8] and a unique guarantee of unfettered operation accorded him: "the jurisdiction of the Special Prosecutor will not be limited without the President's first consulting with such Members of Congress [the leaders of both Houses and the respective Committees on the Judiciary] and ascertaining that their consensus is in accord with his proposed action." [9] The President not having so consulted, to the Court's knowledge, his attempt to abridge the Special Prosecutor's independence with the argument that he cannot seek evidence from the President by court process is a nullity and does not defeat the Court's jurisdiction.

■ The President advances three principal arguments on the merits supporting his motion to quash. Primary among these is his assertion that the subpoena, together with the Special Prosecutor's showing of relevancy and evidentiary value filed May 10, 1974, fails to comply with the requirements of Rule 17(c). It is conceded by all parties that Rule 17(c) cannot be employed as a vehicle for discovery, and that a showing of good cause is necessary. The landmark cases interpreting Rule 17(c), Bowman Dairy Company v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L. Ed. 879 (1951) and United States v. Iozia, 13 F.R.D. 335 (S.D.N.Y.1952), are cited and relied upon by both sides. Basically, good cause under Rule 17(c) requires a showing that (1) subpoenaed materials are evidentiary and relevant; (2) they are not otherwise procurable reasonably in advance of trial; (3) the party cannot properly prepare for trial without them, and failure to obtain them may delay the trial; and (4) the application is made in good faith, and does

---

6. The President has asserted the point to preserve it, in his words, "should it be necessary for this case to reach a court in which Nixon v. Sirica is not a controlling precedent."

7. Nader v. Bork, 366 F.Supp. 104 (DDC 1973). Former Special Prosecutor Archibald Cox received a delegation of powers and responsibilities from the Attorney General acting by authority of 28 U.S.C. §§ 509, 510 and 5 U.S.C. § 301. The terms of this delegation were promulgated by Department of Justice Order No. 517–73, 38 Fed.Reg. 14,688 (June 4, 1973) and reaffirmed as to Mr. Jaworski in Department of Justice Or-

der No. 551–73, 38 Fed.Reg. 30,738 (November 7, 1973).

8. *See, e. g.*, The President's News Conference of October 26, 1973, 9 Weekly Compilation of Presidential Documents, p. 1289 (Oct. 29, 1973) ; Letter of Acting Attorney General Robert H. Bork to Leon Jaworski, Esq. dated November 21, 1973 ; and Hearings Before the Senate Committee on the Judiciary on the Special Prosecutor, 93rd Cong., 1st Sess., pt. 2, pp. 571–573.

9. Department of Justice Order No. 554–73, 38 Fed.Reg. 32,805 (November 27, 1973).

**1330**

not constitute a "fishing expedition." See United States v. Iozia, *supra*, 13 F. R.D. at 338. It is the Court's position that the Special Prosecutor's May 10, 1974 memorandum correctly applies the Rule 17(c) standards, particularly in the more unusual situation of this kind where the subpoena, rather than being directed to the government by defendants, issues to what, as a practical matter, is a third party. It is the Court's conclusion as well, supported again by reference to the Special Prosecutor's memorandum and appendix, that the requirements of Rule 17(c) are here met.[10]

■■ With regard to the confidentiality privilege interposed by the President, the Court agrees that his claim is presumptively valid. The Special Prosecutor's submissions, however, in the Court's opinion, constitute a *prima facie* showing adequate to rebut the presumption in each instance, and a demonstra-

tion of need sufficiently compelling to warrant judicial examination in chambers incident to weighing claims of privilege where the privilege has not been relinquished.[11] In citing relinquishment of privilege, the Court has reference to the portions of subpoenaed recordings which the President has caused to be reduced to transcript form and published. For such, the Court finds the privilege claimed non-existent since the conversations are, to that extent at least, no longer confidential. See Nixon v. Sirica, supra, 487 F.2d at 718.

The President's third argument on the merits speaks to the defendants' contention that the subpoenaed materials are necessarily producible to them under the principles enunciated in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963) and its progeny, the Jencks Act, 18 U.S.C. § 3500, and rules of discovery for criminal proceedings.

---

10. The Nixon v. Sirica case, arising out of the grand jury investigation which produced the indictment herein, presented circumstances warranting the Court's *in camera* inspection of subpoenaed items. 487 F.2d at 718, 719. The need for evidence presented here is, if anything, more compelling since the matter has developed into a criminal trial where the standard of proof is not simply probable cause but proof beyond a reasonable doubt, and where defendants confront a more direct threat to their reputations and liberty. The President contends that because the Special Prosecutor would not have commenced this case without evidence sufficient, in his opinion, to convict the defendants, the need for other evidence is insubstantial. Such an argument, however, ignores the fact not only that it is the Special Prosecutor alone, in this instance, who has the duty to determine the quantity and quality of evidence necessary to prosecute, but that the Prosecutor has an obligation to obtain and present *all* the relevant evidence. It has never been the law that once an indictment issues, evidence beyond that at hand is unnecessary and should not be sought.

11. In this connection, it is significant that although the Special Prosecutor is forced in part to rest his showing on circumstantial evidence, having been denied access to the material solicited, in the approximately 20

instances where contents of subpoenaed tapes have been made public, the Prosecutor's assertions that "Watergate" was discussed have been shown accurate without exception. Counsel for the President is unable to state that other subpoenaed items are or are not relevant to this case because he has not seen or heard them. (Transcript of Proceedings In Camera, May 13, 1974, pp. 61, 62.) Nevertheless, he cites the President's April 29, 1974 public characterization of edited transcripts produced from tape recordings including some of those here subpoenaed:

> They include all the relevant portions of all of the subpoenaed conversations that were recorded—that is, all portions that relate to the question of what I knew about Watergate or the cover-up, and what I did about it. They also include transcripts of other conversations which were not subpoenaed, but which have a significant bearing on the question of Presidential actions with regard to Watergate.
>
> \*　　\*　　\*　　\*　　\*
>
> As far as what the President personally knew and did with regard to Watergate and the cover-up is concerned, these materials—together with those already made available—will tell it all.

Be that as it may, "what the President personally knew and did" is not dispositive of the issues in this case.

The President maintains instead that defendants cannot require production under *Brady* of material in the possession of a non-investigatory government agency or items made unavailable because of their privileged character. The Court finds it unnecessary, due to its disposition of the motion to quash, to reach this question. Under Rule 17(c), the Court "may permit" the materials produced "to be inspected by the parties and their attorneys." The Court intends to supply defense counsel with any and all exculpatory matter that may be found in the items produced, and to deliver any and all non-privileged matter to the Special Prosecutor. It is, of course, the Special Prosecutor's continuing obligation to furnish defendants with *Brady* material that comes into his possession. Defendants' requests for access to the whole of materials produced will be more appropriately considered in conjunction with their pretrial discovery motions.

In requiring compliance with the subpoena, that is, production before the Court, and in ruling on claims of privilege, the Court adopts in full the procedures and criteria established by the United States Court of Appeals for this Circuit in Nixon v. Sirica, *supra*, 487 F. 2d at 716–721 (parts IV, V, and VI of the majority opinion). Thus, adequate time will be allowed for preparation of an index and analysis detailing particular claims of privilege the President wishes to make. The originals of all subpoenaed items will accompany the index and analysis when transmitted to the Court. In addition, a separate tape recording, copies from the originals, containing only those portions of conversations since transcribed and made public should be prepared and delivered along with the subpoenaed materials.

To protect the rights of individuals, various of the proceedings and papers concerning this subpoena have been sealed. Such matters will remain under seal, and all persons having knowledge of them will remain subject to restrictions of confidentiality imposed upon them pending further order of the Court. The foregoing, of course, does not affect the transmittal of such materials to appellate courts under seal as a necessary part of the record in this matter. The Court sees no need to grant more extensive protective orders at this time or to expunge portions of the record. Matter sought to be expunged is relevant, for example, to a determination that the presumption of privilege is overcome.

Now, therefore, it is by the Court this 20th day of May, 1974,

Ordered that the President's motion to quash be, and the same hereby is, denied; and it is

Further ordered that on or before May 31, 1974, the President or any subordinate officer, official, or employee with custody or control of the documents or objects subpoenaed by the Special Prosecutor with leave of Court on April 18, 1974, shall deliver to the Court the originals of all subpoenaed items together with an index and analysis and copy tape recording as described in the foregoing opinion; and it is

Further ordered that motions for protective orders and to expunge filed or raised orally in this matter, except to the extent already granted by the Court in proceedings heretofore, be, and the same hereby are, denied; and it is

Further ordered that should the President initiate appellate review of the Court's order prior to 4:00 p. m., Friday, May 24, 1974, the Court's order shall be stayed pending the completion of such review.