**CURTISS–WRIGHT CORPORATION,**
Plaintiff,

v.

**John L. McLUCAS, Secretary of the
Air Force, Defendant,**

and

**Southwest Airmotive Company, a division
of Cooper Airmotive, Inc., Inter-
venor-Defendant.**

**Civ. No. 807–73.**

United States District Court,
D. New Jersey.

Aug. 27, 1974.

Meyner & Wiley by John N. Malyska, Newark, N. J., Pettit, Evers & Martin by David V. Anthony, Sellers, Conner & Cuneo by William H. Butterfield, Washington, D. C., for plaintiff.

Robinson, Wayne & Greenberg by Stephen M. Greenberg, Newark, N. J., Reavis, Pogue, Neal & Rose by W. Stanfield Johnson and Jean-Pierre Swennen, Washington, D. C., for intervenor-defendant.

Jonathan L. Goldstein, U. S. Atty. by Richard R. Hellstern, First Asst. U. S. Atty., and Amos Gern, Asst. U. S. Atty., Newark, N. J., for defendant.

## OPINION

COOLAHAN, District Judge.

In its earlier opinion in this action, Curtiss-Wright Corp. v. McLucas, 364 F. Supp. 750 (D.N.J.1973), this Court held that plaintiff had failed to show violations of the Armed Services Procurement Act by the Air Force, 10 U.S.C. § 2304 et seq., in the formulation of contract No. F34601–73–D–1444. The Court further determined that the Secretary of Labor (Secretary) was the proper official to review the contract to determine whether it was subject to the Service Contract Act (SCA), 41 U.S.C. § 351 et seq. The opinion of the Court intimated that a finding by the Secretary that the SCA was applicable would annul the contract at issue (364 F.Supp. at 774):

> . . . there exists a possibility that plaintiff could ultimately succeed in gaining a declaration of coverage under the Service Contract Act, which, in effect, would be a declaration that the contract as presently constituted, without statements of wage and benefits as required by the Act, 41 U.S.C. § 351(a)(1), (2), is illegal on its face.

And earlier in the opinion it is stated (364 F.Supp. at 772):

> Had the Secretary issued a decision as to the particular contract at hand, the Court would have been bound to accept his conclusion.

The instant motions were prompted by the decision of the Secretary of March 19, 1974 holding contract No. F34601–73–D–1444 to be subject in part to the SCA. The opinion stated:

> [we] conclude that none of the work in performing this contract which is done prior to the selection of the parts for assembly into particular engines is work in accordance with the provisions of the Walsh-Healey Act, within the meaning of Section 7(2) [41 U.S. C. § 356(2)] of the Service Contract Act. All the work not within such ex-

emption is, as previously stated, subject to the Service Contract and the wage determinations made thereunder.[1]

On the strength of this ruling and this Court's earlier opinion, plaintiff Curtiss-Wright has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Intervenor-defendant Southwest Airmotive and the Air Force have also made motions to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment.

The central issue before the Court is whether it should accept a newly argued legal theory advanced by the Air Force and Southwest Airmotive (defendants) and rule in their favor, irrespective of the decision of the Department of Labor.

Essentially, defendants contend that annulment of the contract is not a legally required consequence of the Secretary's decision.[2] It is averred that the SCA can be lawfully enforced through modification of the contract to reflect the ruling of the Secretary.

At the outset, this Court recognizes that the language from its earlier opinion set forth above could be interpreted to mean that the March 19, 1974 opinion of the Secretary should automatically trigger summary judgment for plaintiff. It is incumbent upon this Court, however, to address the new issues defendants have introduced. It is not infrequently the responsibility of courts to "recede from the implications of . . . dicta in . . . earlier cases" when being "squarely presented" with a new issue. NLRB v. Boeing Co.,

[1]. The opinion of the Secretary was issued as a letter to the Secretary of the Air Force from the Acting Administrator of the Wage and Hour Division of the Department of Labor. The quoted language is found on page 15 of the letter.

[2]. Southwest Airmotive and the Air Force point to and rely on a decision of the Comptroller General of the United States, dated December 6, 1973, in the matter of Lockheed Aircraft Service Co. protest, B–178773 (*Lockheed Protest*). The issues in the *Lockheed* matter were similar to those in the instant case in that the Air Force contract challenged by Lockheed had not included an SCA clause that the Secretary of Labor later ruled was required. In fact, the opinion of the Comptroller General announced the view that its *Lockheed* decision applied equally to the instant matter:

> We gather from [the statement at 364 F. Supp. at 772 n. 20] that the Court may be interested in our views with respect to the primary issue involved in both this case and the *Curtiss-Wright* matter.

Opinion at 3. The *Lockheed Protest* opinion accepted an argument of the Air Force, now advanced by both defendants in the instant case, that the jet engine overhaul contract could not be adjudged illegal as long as the Air Force had a "reasonable basis" for believing that the Walsh-Healey Act, rather than the SCA, applied (pp. 4–5, 7–8):

> . . . although the Service Contract Act is applicable by its terms to all contracts . . . which are principally for services, the regulatory scheme envisions an initial determination by the procuring agency as to whether a proposed contract "may be subject to the Act." 29 C.F.R. 4.4; ASPR 12–1005.2. Thus, if the agency believes a contract may be subject to the Act, it is required to notify DOL by submission of a Standard Form 98. If the agency does not believe a contract may be subject to the Act, however, then there is no duty on its part to submit anything to DOL or to include a Service Contract Act clause in the solicitation. Accordingly, we think the only issue that must be determined is whether or not the Air Force contracting officer had a reasonable basis for believing that this procurement was not one that "may be subject to the Act." . . . We think the record reasonably supports the Air Force position . . . we conclude that the contracting officer acted in good faith in regarding the Service Contract Act as not applicable to this procurement, that his failure to include a Service Contract clause in the solicitation and to submit a Standard Form 98 to DOL was not a deliberate, arbitrary attempt to circumvent any statutory or regulatory provision, and that the contract was not awarded illegally.

Whereas the opinion of the Comptroller General in the *Lockheed Protest* is entitled to some weight in the review by this Court of the law governing the instant matter, Wheelabrator Corp. v. Chafee, 147 U.S.App. D.C. 238, 455 F.2d 1306, 1316 (1971), the *Lockheed* decision is not binding on this Court, and no party has argued that it is binding.

412 U.S. 67, 72, 93 S.Ct. 1952, 1956, 36 L.Ed.2d 752 (1973). A reconsideration on new grounds of the summary judgment motions of defendants does not moot the discussion of the SCA in the earlier opinion of this Court or the decision of this Court to refer the question of SCA coverage to the Secretary. A determination by the Secretary that the SCA did not apply to the instant contract would have obviated the need for this Court to consider the issues now before it.

Defendants opine that the instant contract is valid unless the Air Force violated 29 C.F.R. § 4.4(a), which provides:

> Not less than 30 days prior to any invitation for bids, request for proposals, or commencement of negotiations for any contract exceeding $2,500 which may be subject to the Act, the contracting agency shall file with the Office of Special Wage Standards, Employment Standards Administration, Department of Labor, its notice of intention to make a service contract. Such notice shall be submitted on Standard Form 98, Notice of Intention to Make a Service Contract, which shall be completed in accordance with the instructions provided and shall be supplemented by the information required under paragraphs (b) and (c) of this section.

Defendants would have this Court conclude, as did the Comptroller General in the *Lockheed Protest*, n. 2 *supra*, that the Air Force contract officer in charge of reviewing the instant contract made a good faith decision that it was not one which "may be subject" to the provisions of the SCA. In support of this argument, defendants cite a footnote in this Court's earlier opinion which stated that it was the view of the Court that the Air Force had not acted unreasonably (364 F.Supp. at 772 n. 21):

> It should be emphasized that in no way whatsoever does this Court intimate any wrongdoing or bad faith on the part of Air Force personnel in determining the application of the Service Contract Act to contracts for jet engine overhaul, repair, modification or maintenance. In the earlier years of the Act, coverage under the Act was mooted by the Secretary of Labor's nonissuance of wage and benefits determinations. The problem of dual coverage under the Service Contract Act and Walsh-Healey Act, an extremely complicated one from the viewpoint of practical administration, to say the least, is one with which the Secretary is still grappling.

The Air Force has cited to this Court rulings and statements of the Department of Labor over the years leaving the question of SCA applicability to jet engine overhaul contracts an open one.[3] Further, the Air Force cites an affidavit of one of the draftsmen of the contract indicating the good faith basis for the Air Force decision not to incorporate an SCA clause in the instant contract.[4]

Defendants have, in addition, stressed the traditional reluctance of courts to void contracts in the absence of a clear expression by the legislature that contract abrogation is the required remedy. This Court has been urged to apply the doctrine of G. L. Christian & Associates v. United States, 312 F.2d 418, 160 Ct. Cl. 1 (1963), cert. den. 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314, 376 U.S. 929, 84 S.Ct. 657, 11 L.Ed.2d 627, 377 U.S. 1010, 84 S.Ct. 1906, 12 L.Ed.2d 1059 (1964). Plaintiffs in that case sued the Government for losses sustained when the Government canceled a contract for the construction of a housing project at a military base to which the plaintiff was a party. One of the damage items for which plaintiff sued was anticipated profits. The Court determined that the *Christian* plaintiffs would be entitled to recovery for anticipated profits "only if the termination of the contract by the Government is wrongful and constitutes a breach." 312 F.2d at 423. The Gov-

---

3. See note 16 *infra*.

4. See note 11 *infra*.

ernment argued that there had been no breach, even in the absence of a clause specifying that the Government could cancel the contract. The Government averred that the Armed Services Procurement Regulations required that a termination clause be made part of every construction contract, and if such a clause were not actually written into the contract, such a provision would exist as a requirement of law. The Court endorsed the Government's theory and stated (312 F.2d at 424):

> . . . if [the regulations] applied here, there was a legal requirement that the plaintiff's contract contain the standard termination clause and the contract must be read as if it did.

The Court stated further that a termination clause could well be read into the contract because "that limitation is a deeply ingrained strand of public procurement policy." 312 F.2d at 426.

Defendants opine that the *Christian* doctrine is not, by itself, the only legal vehicle by which this Court may incorporate the SCA requirements into the instant contract. Defendants cite 29 C. F.R. § 4.5(c), propounded by the Department of Labor, providing for cure of contract deficiency through contract amendment:[5]

> If the notice of intention required by § 4.4 is not filed with the required supporting documents within the time provided in such section, the contracting agency shall exercise any and all of its power that may be needed (including, where necessary, its power to negotiate, its power to pay any necessary additional costs, and its power under any provision of the contract authorizing changes) to include in the contract any wage determinations communicated to it within 30 days of

the filing of such notice or of the discovery by the Employment Standards Administration, U.S. Department of Labor, of such omission.

In addition, the Department of Labor has sent, as promised,[6] a wage ruling to the Air Force to cover the work which the instant contract is designed to accomplish.[7]

■■ Plaintiff has interposed several arguments against the summary judgment motions of defendants. Plaintiff initially avers that the instant contract must be found to be invalid under section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706. That section provides:

> [a] reviewing court shall . . . (2) hold unlawful and set aside agency action . . . (A) . . . not in accordance with law. . . .

Plaintiff states that since the award of the instant contract was "agency action" and since the contract has not been written "in accordance with law," the contract is "unlawful." It is true, as this Court has heretofore held, that Scanwell Laboratories, Inc. v. Shaffer, 137 U.S. App.D.C. 371, 424 F.2d 859 (1970), recognized the standing of disappointed bidders to challenge government contracts in United States District Courts pursuant to the APA. Plaintiff has not, however, followed through on its argument by showing that section 10(e) of the APA *requires* the remedy of contract abrogation for the kind of legal deficiency that the Department of Labor has found the instant contract to have. The crucial phrase to be interpreted is "set aside agency action." This phrase does not appear to this Court to require the setting aside of an entire agency decision when the legal deficiencies of the

---

5. See pp. 10–12, *infra.*

6. The March 19, 1974 opinion of the Secretary of Labor stated, at p. 16:
   In response to the SF–98 submitted by the Air Force pursuant to the order of the Court in this case, a wage determination will accordingly be prepared containing the minimum wages and fringe benefits to be paid the various classes of service employees engaged in covered work under the contract in question.

7. The wage determination was issued by the Department of Labor to the Secretary of the Air Force on May 24, 1974.

decision are readily curable, and the deficiencies do not squarely interfere with the rights of the party making the protest. Keco Industries v. Laird, 318 F. Supp. 1361, 1365 (D.D.C.1970). The rights of plaintiff have not been squarely interfered with through the failure of the Air Force to apply the APA to the instant contract. The SCA was designed to protect laborers and not disappointed bidders. This Court thus rejects the foregoing argument.[8]

■ The Court next addresses the argument advanced by plaintiff centering on Kentron Hawaii Ltd. v. Warner, 156 U.S.App.D.C. 274, 480 F.2d 1166 (1973). At issue was the validity of a government contract for operation and maintenance of a missile range facility. The *Kentron* plaintiff alleged that the Navy had failed to abide by the SCA in not forwarding certain wage data to the Department of Labor. There is language in the case which may be used to support plaintiff's argument that a failure properly to apply the SCA would void a contract (480 F.2d at 1180):

> If a[n] . . . error of this sort was causally related to the Labor Department's refusal to issue a wage determination, then the procurement procedure for this service contract was fatally flawed.

The situation in *Kentron* is not, however, analogous to that of the instant case. The *Kentron* court rejected the overall legal arguments of the *Kentron* plaintiff on the ground that "the information at issue could not have affected the Labor Department's decision." *Id*. In *Kentron* there was no question about the applicability of the SCA itself as there has been in the instant action. *Kentron* had no holding relevant to the issue of *good faith* failure to abide by the SCA as exists in this case. Thus, *Kentron* is not an accurate guide for this Court to follow.

■ Plaintiff has further argued that 29 C.F.R. § 4.5(c), on which defendants relied for the proposition of law that a government contract may be amended, supports plaintiff's position. Plaintiff contends that § 4.5(c) "gives the procuring agency a reprieve from meeting the requirement that the SF–98 be submitted 'at least 30 days' before negotiations are commenced. The regulation thus speaks of a *pre-award* situation and has nothing at all to do with a remedy following litigation." Plaintiff cites language from the Comptroller General's *Lockheed Protest* opinion which states that the Comptroller General would prefer to see the Secretary of Labor promulgate a regulation clearly allowing service contracts to be amended in cases of disagreement between the Secretary and the Services on the applicability of the SCA.[9]

---

8. A similar question is presented in reference to section 1–403 of the Armed Services Procurement Regulations, 32 C.F.R. § 1.403, which provides:

> No contract shall be entered into unless all applicable requirements of law and of this subchapter, and all other applicable procedures . . . have been met.

This Court has recognized that " . . . the ASPR have the full force and effect of law. Paul v. United States, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963)." 364 F. Supp. at 762. Yet, as with the general language of the APA, this regulation does not compel a ruling that the absence of an SCA clause is fatal to t'e instant contract. The word "applicable" does not convey a sufficiently certain meaning to allow this Court to conclude that a contract must be abrogated even when the legal deficiency did not go to the heart of the rights of the protesting party.

9. At page 8 of the *Lockheed Protest* decision of the Comptroller General it is stated:

> We note that 29 C.F.R. 4.5(c) provides that if a contracting agency does not notify DOL of its intent to make a service contract within the time prescribed by 29 C.F.R. 4.4, "the contracting agency shall exercise any and all of its power that may be needed (including . . . its power to negotiate, its power to pay any necessary additional costs, and its power under any provision of the contract authorizing changes) to include in the contract any wage determinations communicated to it within 30 days of the filing of such notice or of the discovery by the Employment Standards Administration, U. S. Department of Labor, of such omission." We

In the view of this Court, the wording of § 4.5(c) is ambiguous and does not clearly provide a basis for the position of either plaintiff or defendants. The first phrases of the provision emphasize the fact that the provision is applicable when a notice of intention to make a service contract has been filed pursuant to § 4.4(a):

> If the notice of intention required by § 4.4 is not filed with the required supporting documents within the time provided in such section. . . .

The final clause of the regulation, however, can be taken to mean that there is provision for contract amendment whether or not a notice of intention to make a service contract has been filed:

> . . . the contracting agency shall exercise any and all of its power that may be needed (including, where necessary, its power to negotiate, its power to pay any necessary additional costs, and its power under any provision of the contract authorizing changes) to include in the contract any wage determinations communicated to it within 30 days of the filing of such notice *or of the discovery by the Employment Standards Administration, U.S. Department of Labor, of such omission.* [Emphasis supplied.]

At the least it can be said that the provision does not expressly limit the remedy of contract amendment to those situations in which a notice of intention to make a service contract has been filed. It would be incongruous to suppose that the Secretary would provide for a procedure wherein inadequate notices of intention may be cured through amendment and not afford to the Services the same flexibility when no notice of intention has been filed. This Court holds that the common sense need for flexibility expressed through § 4.5(c) and the doctrine of the *Christian* case provide adequately strong bases to adopt defendants' theory.

■ Each side of this litigation has presented arguments which this Court sees as running askew to the relevant legal issues at this stage of the action. Defendant Southwest Airmotive has argued that the decision of the Secretary of Labor as to SCA applicability to the present contract is erroneous. The question of the finality of the Secretary's determination was addressed in the earlier opinion of this Court which stated (364 F.Supp. at 769):

> In Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943), the Supreme Court held that it was the Secretary of Labor and not the procuring agency nor even the courts who is responsible for determining coverage under the Walsh-Healey Act, 41 U.S.C. § 35 et seq. Since the authority of the Secretary to act under the Service Contract [Act] is co-extensive with his enforcement powers under the Walsh-Healey Act, it follows naturally that here, too, his determination is final and binding. *See* Endicott Johnson Corp. v. Perkins, *supra* at 509, 63 S.Ct. at 343.

Thus, Southwest's challenge in this Court of the Secretary's ruling is without foundation.

■ Plaintiff has made in oral argument (Tr. p. 10) an assertion that

---

think a similar provision, specifically pertaining to the situation in which DOL, subsequent to contract award, disagrees with a determination by a contracting agency that the Service Contract Act and therefore the notice requirements of 29 C.F.R. 4.4 were not applicable to the procurement, would protect the workers concerned and would provide for the orderly resolution of the type of dispute involved herein without the potential disruption of the procurement process. Accordingly, we are suggesting to the Secretary of Labor that consideration be given to the development and promulgation of such a provision.

This language does not imply that the Comptroller General has concluded, *as a matter of law,* that the remedy of contract amendment is not available in cases similar to the instant matter. The Comptroller General appears to be largely concerned with clearing up an ambiguity in Department of Labor regulations.

Southwest has been incapable of ably performing the contract—a failure necessitating the Air Force to overhaul some engines on its own. In light of this Court's decision in the first part of its earlier opinion, 364 F.Supp. at 757–765, such an argument has no place at this stage of the proceedings. Plaintiff's argument is a nullity. See United States v. Mitchell, 377 F.Supp. 1326, at 1329 (D.D.C.1974).

■ The Air Force has filed several affidavits of high-ranking military officers detailing the inconvenience which the Air Force would suffer should this Court rule adversely to the instant contract.[10] Some of the affidavits state that a repetition of the contract-award process to cover the work the Air Force wants done would lead to a delay which would harm the defense posture of the United States. These considerations, however, important, cannot be a focus for this Court in determining the motions now before it. The role of this Court is to construe the relevant acts and regulations under which the Air Force is to operate in the service contract area. This Court's decision is made entirely under those laws.

Lastly, this Court must determine, in light of the conclusions of law expressed heretofore in this opinion, whether there are issues of fact remaining to be re-solved so as to make the granting of summary judgment inappropriate at this time.

This Court has recognized the fact that under 29 C.F.R. § 4.4(a), an agency must come to *some* initial determination, under its own discretion, as to whether the SCA applies to work to be performed in a service contract (364 F. Supp. at 770):

> The difficulty with the administration of the Act, however, is the enormity of contracts concluded by the Government and its agencies and the virtual impossibility of ruling upon the applicability of the Act as to all contracts or bids submitted to the Secretary of Labor for review and advice. Therefore, the Secretary's regulations contemplate submission only when the procuring agency has made a determination that a particular contract or bid *may* be subject to the Act.

Plaintiff does not dispute the fact that in failing to provide for the requirements of the SCA the Air Force was following long-standing service thinking, applied over a number of years, which had been unchallenged by the Department of Labor.[11] Neither does plaintiff dispute the fact that plaintiff requested a Department of Labor ruling on SCA applicability only after plaintiff should have been aware that Southwest would

---

10. The Air Force has filed affidavits of the following officers:
Major General George Rhodes, Deputy Chief of Staff/Material Management
Major General C..arles F. Minter, Sr., Deputy Chief of Staff/Maintenance
Brigadier General Charles E. Buckingham, Deputy Chief of Staff/Procurement and Production

11. The affidavit filed with this Court of T. H. Graber, an employee working with the Air Force Logistics Command which drafted the model contract used in this case, states that the policy of not providing for SCA requirements in aircraft engine overhaul contracts was made at the time of the effective date of the SCA. As this Court stated in its earlier opinion (364 F.Supp. at 770):
Commencing with the effective date of the Contract Service Act in 1966, Air Force Logistics Command, DCS/Procurement and Production determined that the Act was inapplicable to such contracts. The legal office of the Air Force Logistics Command Headquarters, the Office of the Staff Judge Advocate, and the Office of General Counsel all concurred in this decision. Briefly stated, the Air Force determined that aircraft engine overhaul contracts do not have as their "principal purpose" the furnishing of services through the use of service employees within the meaning of the Act, 41 U.S.C. § 351(a). Rather, it considered such overhaul in the nature of a rebuilding or remanufacturing of the engine, requiring the furnishing of substantial material.
It is not contested that no Department of Labor ruling specifically disavowing the Air Force policy was rendered prior to that in the instant case.

be awarded the contract.[12] Plaintiff's only assertion on the issue of Air Force good faith is that the Air Force, at the time of award to Southwest, should have known that the SCA was applicable to contracts to overhaul jet engines. Plaintiff points to section 4.130 of Labor Department Regulations under the SCA, 29 C.F.R. § 4.130,[13] to form SF–98 itself,[14] and to a 1969 ruling of the Department of Labor.[15] The Air Force has, however, pointed out that pre-March 19, 1974 pronouncements of the Department of Labor could be reasonably interpreted as endorsing the policy of nonapplication of the SCA to jet engine overhaul contracts.[16] Further, the 1969 Department of Labor ruling to

12. Plaintiff's complaint specifies that the Air Force's Letter Request for Proposals set January 25, 1973 as the deadline for submission of bids for the instant contract. Plaintiff forwarded its bid protest to the General Accounting Office on April 18, 1973, apparently after the date of award to Southwest. See affidavit of Seymour S. Bitterman, Corporate Senior Vice President of plaintiff, dated June 7, 1973, ¶ 13. Also the wording of the bid protest itself suggests that it was filed subsequent to the award of the contract: "[plaintiff] hereby protests *the granting of an award* to Southwest Airmotive." (Emphasis supplied.) Had SCA applicability been as obvious in April 1973 as plaintiff contends, plaintiff's protest should have been more timely or plaintiff should have provided for SCA specifications in its own contract proposal. It should further be pointed out that plaintiff's March 18, 1973 bid protest did not mention SCA applicability as a ground.

Defendants have used the failure of plaintiff to make an early protest as support for an argument that this Court should invoke the doctrine of laches against plaintiff. The Court finds it unnecessary to reach this issue. It should be pointed out, however, that plaintiff was the holder in former years of contracts for the same Air Force work that is covered by the instant contract. Neither plaintiff nor the Air Force requested a Department of Labor ruling on SCA applicability when plaintiff was the contractor in this area.

13. 29 C.F.R. § 4.130 provides in relevant part:
> The following list is illustrative . . . of the types of services called for by such contracts that have been found to come within the coverage of the [SCA].
> (s) Maintenance and repair of motor equipment.

While it is conceivable that this regulation could have been interpreted by Air Force officials as a clear indication that jet engine overhaul contracts are covered by the SCA, the use of the term "motor equipment" is not sufficiently specific as to make such an interpretation the only reasonable one.

14. Form SF–98 does refer to "aircraft engine repair," but the form is not law.

15. The May 22, 1969 letter of the Department of Labor to Mr. Harry S. Baer, Jr., Executive Director, National Aero Space Services Association (cited in plaintiff's brief at page 10) states:
> The solicitation in question calls for the furnishing of all services and materials necessary for Progressive Aircraft Rework of the S–2 series aircraft, and such activities as the disassembly, inspection, maintenance, repair, modification, overhaul and reassembly of the aircraft and its various accessories, components and systems, and the test flight of such aircraft.
> After careful examination of the contract and discussions with the Naval Air Systems Command, it is our opinion that the contract is chiefly for the furnishing of services and subject to the Service Contract Act.

16. On May 22, 1968 the Department of Labor wrote to Colonel Albert M. Lehner, Chief Contract Management Division, Director of Procurement Policy, DCS/S & L, in regard to the applicability of the SCA to a contract for engine overhaul. The letter stated:
> If the contract is to furnish a complete overhaul and rebuilt engine, as your letter states, you will be correct in your assumption that the primary purpose of the contract is not a service contract, but rather the supply of overhauled and rebuilt engines. The provisions of the McNamara-O'Hara Service Contract Act need not be included in contracts of this sort.

On March 22, 1971 the Federal Aviation Administration submitted an SF–98 for a Department of Labor ruling on the applicability of the SCA to a contract for the "overhaul, repair and modification of Pratt & Whitney Turbojet Model JT12A–6A engines and other services to support Federal Aviation Administration Lockheed Jet Star Aircraft No. N1." On April 19, 1971 the Department of Labor responded:
> According to your description, the contract may be principally for the manufacture or

which plaintiff has referred the Court, centered on a Navy contract for overhaul of whole aircraft rather than an engine overhaul contract as in the instant case.[17] There is language in the portion of the 1969 ruling cited by plaintiff indicating that the contract at issue in 1969 was for work involving "modification" and "reassembly" as well as overhaul of aircraft. The 1969 contract thus went far beyond the overhaul of one aircraft component, as in the instant case. The Air Force, finally, has cited the *Lockheed Protest* opinion, *supra,* of the Comptroller General which found the Air Force policy in respect to the SCA not to constitute a deliberate attempt to violate the Act and not to be a failure to abide by a requirement that was obvious.[18]

Plaintiff has been unable to produce before this Court any pronouncements by the Department of Labor or any other circumstances indicating that the Air Force was on notice to revise its contract policies in such a way as to have affected the award of the instant contract. This Court finds that not until March 19, 1974 could the Air Force have been reasonably expected to believe that the instant contract was or even, under § 4.4(a), "may [have been] subject to the Act." There being no dispute of fact *per se* presented to this Court requiring an evidentiary hearing or opportunity for further discovery, the Court holds, for the reasons specified throughout this opinion, that plaintiff's motion for summary judgment should be denied and defendants' motions for summary judgment should be granted.

Counsel will submit an appropriate order.

furnishing of materials, supplies, articles or equipment, and thus be subject to the labor standards contained in the Walsh-Healey Public Contracts Act, if in excess of $10,000.

In light of these determinations of the Department of Labor coming well after the enactment of the SCA in 1966, the assertion that the Air Force made a good faith determination of nonapplicability of the SCA to the instant contract is amply supported.

17. See note 15, *supra.*

18. See note 2, *supra.*