Debra MACE, Individually and as Representative of the Estate of Jacob Vincent REVILL, Plaintiff(s),

v.

CITY OF PALESTINE, TEXAS and Pat Henderson, Police Chief, Defendant(s).

No. 6:01–CV–269 (TJW).

United States District Court, E.D. Texas, Tyler Division.

Feb. 8, 2002.

---

instructions of the court." 121 F.3d 187, 197 (5th Cir.1997).

692

Mike Patterson, Tyler, TX, pro se.

William S. Hommel, Jr., McGee Hommel & Starr PC, Tyler, TX, for Debera Mace.

Jay Nelson Green, Potter Minton Roberts Davis & Jones, Tyler, TX, for City of Palestine, Pat Henderson.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WARD, District Judge.

Before the Court is Defendants City of Palestine and Police Chief Pat Henderson's Motion for Summary Judgment (# 19). Having considered the matter, the Court GRANTS Defendants' motion.

### Background

On April 16, 2001, at approximately 10:00 P.M., Palestine police responded to a disturbance call reportedly involving two

intoxicated subjects at a mobile home park. Several officers responded to the call and arrived to find a male subject, later identified as Jacob Vincent Revill, inside a mobile home with the front door open. A number of the windows of the mobile home had been broken out and the officers observed blood on a window frame near the front door. As officers neared the entrance of the mobile home, Revill approached them with a sword drawn back above his head as if to strike the officers. The officers drew their weapons and retreated back down the steps of the mobile home while Revill stepped back into the home's living area.

As the officers radioed for backup, Revill paced the living area of the home, screaming at the officers to "get out of here" and stating, "I'll kill all you mother fuckers." Periodically, Revill would bang the sword against the frame of a broken window and tell the officers to get away. Revill also pointed the sword at himself, verbally threatening to cut his own throat. During this time the officers attempted to communicate with Revill, but to no avail. Shortly, two other officers arrived accompanied by a police canine. Revill then began threatening all the officers and the dog. One of the new officers to the scene asked Revill his name, which he told him. Revill then demanded to speak with Police Chief Pat Henderson. The officers complied with Revill's request and Chief Henderson was summoned to the scene.

Upon his arrival, Chief Henderson negotiated with Revill trying to convince him to put down the weapon and give up. During these negotiations, Revill moved about the open doorway of the home, fifteen to twenty-five feet from the officers' positions outside the front door. Because of another mobile home in front of and parallel to Revill's home, the officers could not retreat more than twenty to twenty-five feet from Revill's position, and they could not move to either side of Revill's front door because of the potential for a crossfire situation.

As Chief Henderson negotiated with Revill, Revill continued to move about the open door of the home, swinging and waving the sword. After five to ten minutes, and despite warnings by the officers not to come toward them, Revill exited the trailer and advanced down the front steps onto the ground ten to twenty feet from the officers. Revill maintained this position temporarily then took another step toward the officers and raised the sword above his head in a threatening manner. At this point, Chief Henderson fired one shot, striking Revill in his right arm near the shoulder.[1] Revill dropped the sword but continued to raise his right arm as if he still held the weapon. Officers then released the canine and discharged pepper spray to subdue Revill; however, Revill fought and choked the dog such that it had be pulled away from him. Several officers then tried to take Revill to the ground, but Revill pulled away and walked fifty to one hundred feet from where he was shot before officers were able to gain control over him.

After the officers gained control over Revill, an ambulance and emergency medical personnel which had been waiting near the scene during the standoff quickly responded and began administering medical treatment. Chief Henderson, seeing that Revill was bleeding heavily, then ordered one of his officers to drive the ambulance to the hospital so that the medical personnel could devote their entire attention to

---

1. Chief Henderson readily admits he shot Revill in the shoulder hoping he could wound and disarm Revill without killing him.

Revill's injuries. Revill later died at the hospital from his wounds.

**Discussion**

Plaintiff Debra Mace, as representative of the estate of Jacob Revill, brings this suit under 42 U.S.C. § 1983, alleging the Defendants violated Revill's Fourth and Fourteenth Amendment rights. Specifically, Plaintiff alleges Chief Henderson used excessive force against Revill and showed deliberate indifference to Revill's medical needs. Plaintiff also seeks to hold the City of Palestine liable on the ground that the Chief's actions represent a custom or policy employed by the City in response to emergency situations. However, because no constitutional violation occurred in this case, Defendants are entitled to summary judgment.

*1. Standard of Review.*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P.56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate in *any* case where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1076 (5th Cir. 1994). However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party moving for summary judgment bears the initial burden of identifying those portions of the summary judgment evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has satisfied this burden, the nonmoving party must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file set forth specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

*2. Qualified Immunity.*

A private right of action exists against police officers who, acting under color of state law, violate federal constitutional or statutory rights. 42 U.S.C. § 1983. The defense of qualified immunity, however, protects § 1983 defendants from liability for civil damages when performing discretionary functions, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

In considering the merits of a qualified immunity defense in excessive force cases, like this one, courts previously considered whether the right was clearly established and, if so, whether, in light of such clearly established law, a reasonable officer could have known that his or her conduct was

unlawful. *See Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001)(citing *Graham v. Connor* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see also Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.2001). However, the Supreme Court recently revisited the above analysis, clarifying the sequence of inquiries for qualified immunity cases. *Saucier*, 121 S.Ct. at 2158.

■ After *Saucier*, a qualified immunity analysis must begin with this threshold question: based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right? *Id.* at 2156; *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001). If no constitutional right was violated, the court need not inquire further. *Saucier*, 121 S.Ct. at 2156. If, however, a constitutional violation occurred, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right. *Id.* at 2158–59. *Saucier*'s qualified immunity inquiry, requiring courts to focus first on the underlying constitutional issue, is intended to assist courts in disposing of insubstantial suits at an early stage of litigation, and to encourage courts to "set forth principles which will become the basis for a holding that a right is clearly established." *Id.* at 2156; *Jackson*, 268 F.3d at 651.

■ In considering the first step of *Saucier*'s two-step qualified immunity inquiry, this Court must determine whether Revill's constitutional right to be free from excessive force was violated. The Supreme Court has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Under the Fourth Amendment's objective reasonableness standard, "the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. "A police officer may use deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985).

■ Importantly, however, "[t]he calculus of reasonableness must embody an allowance for the fact that police officers are often forced to make split-second judgements—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. Therefore, reasonableness must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. 1865.

In this case, the uncontested facts show that Chief Henderson was confronted with an intoxicated, disturbed individual wielding a sword within ten to twenty feet of him and his other officers. Revill was verbally threatening serious bodily harm to the officers and had raised the sword above his head in a threatening manner at the time he was shot. In these circumstances, it was certainly reasonable for Chief Henderson to use deadly force to abate the threat to himself and others nearby. *Accord Sigman v. Town of Chapel Hill*, 161 F.3d 782, 784–88 (4th Cir.1998) (reaching a similar holding under strikingly similar facts).

■ Plaintiff contends that because Chief Henderson failed to exhaust all other containment options available when he arrived at the scene, his use of deadly force was unreasonable. However, the suggestion that an officer might have responded differently is exactly the sort of judicial second guessing the case law condemns. *See Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865; *Wagner v. Bay City, Texas,* 227 F.3d 316, 321 (5th Cir.2000); *Anderson v. Russell,* 247 F.3d 125, 131 (4th Cir.2001). Plaintiff further argues that Chief Henderson violated Revill's constitutional rights because he used deadly force hoping only to wound Revill. According to Plaintiff, such an act violates Henderson's department's use of force policy. However, the question before the Court is not whether Henderson violated department policy. The only inquiry the Court must make is whether Henderson's use of deadly force was objectively reasonable under the circumstances he confronted. The fact that Henderson hoped only to wound Revill, and that his acts might have violated department policy, is irrelevant if his use of deadly force against an intoxicated, disturbed, threatening, individual in close proximity to him and his other officers, armed with a sword was reasonable. *See Graham,* 490 U.S. at 397–98, 109 S.Ct. 1865 (stating the Fourth Amendment inquiry is one of objective reasonableness and that subjective intentions have no place in the inquiry). As stated above, the Court finds Henderson's conduct was objectively reasonable under the circumstances. Accordingly, no Fourth Amendment violation has occurred and Chief Henderson is entitled to summary judgment on Plaintiff's excessive force claims.[2]

### 3. Deliberate Indifference to Serious Medical Needs.

■ "A pretrial detainee's constitutional right to medical care ... flows from the procedural and substantive due process guarantees of the Fourteenth Amendment." *Wagner v. Bay City, Texas,* 227 F.3d 316, 324 (5th Cir.2000). Liability for failing to provide such care attaches if the plaintiff can show deliberate indifference on the part of the defendant to a substantial risk of serious medical harm and that injuries resulted. *Id.* " 'Deliberate indifference' requires that the official have subjective knowledge of the risk of harm. Mere negligence will not suffice, and '[d]eliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from a ... failure to act reasonably.' " *Id.* Thus, for Plaintiff to prevail on her claim of deliberate indifference, she must present some evidence to show Chief Henderson's actions with regard to Revill's medical needs were unreasonable and that Henderson intended the consequences of those actions. *Id.* Plaintiff has not met this burden.

The uncontradicted evidence in this case shows that an ambulance and emergency medical personnel were waiting nearby as the standoff with Revill progressed. After Revill was shot and finally subdued, the awaiting medical personnel came forward and began administering aid to Revill. Seeing that Revill was badly wounded and in need of the medical personnel's full attention, Chief Henderson ordered one of his officers to drive the ambulance to the hospital so that both medical technicians could attend to Revill. There is no evidence that Chief Henderson, or anyone at

**2.** Having found no constitutional violation, the Court need not reach the second step of *Saucier*'s qualified immunity inquiry. However, if the Court were to conclude that Henderson's use of deadly force was excessive, Plaintiff has not shown that Henderson's use of deadly force violated a clearly established constitutional right. A reasonable police officer could properly believe that the use of deadly force in this situation would not violate a clearly established constitutional right.

the scene, displayed deliberate indifference to Revill's serious medical needs. To the contrary, the evidence shows Chief Henderson diligently pursued and obtained medical care for Revill. Therefore, Henderson is also entitled to summary judgment on Plaintiff's claims of deliberate indifference to serious medical needs.

### 4. Municipal Liability.

 A municipality may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury..." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Webster v. City of Houston*, 735 F.2d 838, 848–49 (5th Cir.1984). However, a municipality cannot be held liable under § 1983 where no constitutional deprivation has occurred. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (holding "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Because neither Revill's Fourth nor Fourteenth Amendment rights were violated, there is no basis upon which to find the City of Palestine liable for the alleged use of excessive force or deliberate indifference to medical needs. Accordingly, the City of Palestine is entitled to summary judgment on all of Plaintiff's claims.

### Conclusion

For these reasons the Court GRANTS Chief Pat Henderson's and the City of Palestine's Motion for Summary Judgment (# 19) with respect to all of Plaintiff's claims. IT IS THEREFORE ORDERED that all Plaintiff's claims are dismissed with prejudice; IT IS FURTHER ORDERED that all pending motions in this cause are DENIED AS MOOT and that all parties shall bear their own costs associated with this action.

ORDERED and SIGNED this 8th day of February, 2002.